UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE FRISON, <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD MEDICAL SERVICES, <br><br> Defendant. | Case No. 17-cv-212 <br><br> Judge Martha M. Pacold |

## MEMORANDUM OPINION AND ORDER

George Frison, a former inmate at Stateville Correctional Center, developed a painful hernia while he was incarcerated. Frison brought this lawsuit under 42 U.S.C. § 1983, alleging that the medical care and treatment he received at Stateville was constitutionally deficient. Defendant Wexford now moves for summary judgment. [130]. For the following reasons, Wexford's motion [130] is granted.

## BACKGROUND

The court views the facts, which are undisputed unless otherwise noted, in the light most favorable to Frison. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Frison was a prisoner at Stateville from December 2009 until December 2016. *See* [149] ¶ 1.[1] Wexford is a private corporation that contracts with the Illinois Department of Corrections (IDOC) to provide medical treatment to inmates at Stateville. [143] ¶¶ 1, 8.

In January 2013, Frison saw a Wexford physician, Dr. Saleh Obaisi, for a medical examination, during which Dr. Obaisi diagnosed Frison with an abdominal hernia. [149] ¶ 2.[2]

---

[1] Bracketed numbers refer to docket entries and are followed by the page or paragraph number. Page numbers refer to the CM/ECF page number.

[2] Wexford argues that Frison's statements about Dr. Obaisi's diagnosis are inadmissible hearsay. [149] ¶ 2. But under Federal Rule of Evidence 803, statements that are

Nearly three years later, on December 9, 2015, Frison began experiencing pain in his abdomen. Frison testified that he immediately requested treatment but was not seen by a nurse until December 22, nearly two weeks later. [131-1] at 55; [149] ¶¶ 4–5. The medical notes from this visit indicate that Frison reported that he felt a "stabbing pain" in his abdomen and had a "golf ball size" "bump" sitting "above [Frison's] navel area." [149] ¶¶ 5–7; [142] at 5.

On June 14, 2016, Frison was approved for a general surgery evaluation to treat his "re-current incarcerated hernia." [142] at 7. An "incarcerated" hernia is one that is "trapped," or cannot be manually pushed back into place. *See* [131-2] at 11, 21–22.

On July 12, 2016, Frison was examined by an independent physician (*i.e.*, a doctor who was not affiliated with Wexford or employed by IDOC) named Dr. Jose Trevino. [143] ¶¶ 14–15. After examining Frison, Dr. Trevino determined that Frison's hernia was not actually incarcerated but instead was "reducible," meaning that it could be pushed back into place. [143] ¶¶ 10–11. Reducible hernias generally do not need to be repaired urgently; 80–90% of people live with reducible hernias for years without having surgery and some people with reducible hernias never undergo surgery. [143] ¶¶ 12–13.[3] Nevertheless, Dr. Trevino recommended that Frison's hernia be surgically repaired. [143] ¶ 17. The parties dispute whether Dr. Trevino indicated that the surgery was urgent. *Compare* [131-2] at 20 (Dr. Trevino testifying that the surgery could be done "[w]henever we g[o]t it authorized") with [131-1] at 84 (Frison testifying that Dr. Trevino told him that the

---

reasonably pertinent to "medical diagnosis or treatment" and that describe the patient's "medical history" or "past or present symptoms or sensations" are not hearsay. Fed. R. Evid. 803(4)(A)–(B). Accordingly, the court will assume without deciding that Frison's "diagnosis . . . as told to him by his doctors, and his accounting of his symptoms to a doctor, are not hearsay" for purposes of adjudicating the summary judgment motion. *Flournoy v. Est. of Obaisi*, No. 17-cv-7994, 2020 WL 5593284, at *2 (N.D. Ill. Sept. 18, 2020).

Frison also alleges that Dr. Obaisi told him that Wexford "did not want to pay to have hernia surgeries performed" because it viewed them as "cosmetic." [131-1] at 51; [149] ¶ 3. Unlike the alleged hernia diagnosis, it is not clear how this alleged statement by Dr. Obaisi directly relates to Frison's diagnosis or treatment because, as explained below, the evidence shows Frison's hernia surgery was delayed due to a communication issue, not Dr. Obaisi's (or Wexford's) action or inaction. In any event, Frison does not rely on or even cite this alleged statement in his summary judgment brief, so the court does not consider it here.

[3] Frison attempts to dispute these statements, but cites no record or other materials in support of the dispute. Northern District of Illinois Local Rule 56.1 requires that denials be supported by specific record citations. LR 56.1(b)(3). Because Frison did not comply with Local Rule 56.1, these statements are "deemed admitted." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009).

2

surgery should take place within two weeks). For purposes of adjudicating the summary judgment motion, viewing the record in the light most favorable to Frison, there is a genuine dispute of fact as to whether Dr. Trevino indicated that the surgery should take place within two weeks.

Frison's surgery did not take place until March 2017, almost a year after Dr. Trevino's recommendation. The cause of this delay is that—for an unknown or unspecified reason—Dr. Trevino's recommendation was never forwarded to Wexford for collegial review. *See* [141] at 3. The issue apparently did not come to IDOC's attention until in or around January 2017, when a member of the IDOC Administrative Review Board emailed someone named Christine Brown (whose title is unknown but who is not alleged to be affiliated with Wexford) in connection with "reviewing a grievance filed by I/M [inmate] Frison regarding alleged hernia issues." [149] ¶ 11. Brown responded that Frison was referred for surgery by Dr. Trevino but that "it does not appear it [the surgery recommendation] was forwarded to Wexford for collegial review." [149] ¶ 14; *see also* 143 ¶ 21 (undisputed that Dr. Trevino never contacted anyone at Wexford regarding Frison's treatment). On January 13, 2017, Brown's correspondence was forwarded to Dr. Steven Meeks, IDOC Agency Medical Director, and Randy Pfister, the Warden at Stateville. [149] ¶ 15. Without consulting Wexford, Dr. Meeks unilaterally decided to authorize the hernia surgery with Dr. Trevino, which took place a few weeks later, on March 6, 2017. [149] ¶¶ 16–17. During this surgery, Dr. Trevino repaired Frison's hernia. [143] ¶ 18.

Frison filed this lawsuit in December 2016, bringing claims against Wexford, Dr. Obaisi, the director of IDOC, a member of IDOC's Administrative Review Board, and the warden of Stateville. Since then, Dr. Obaisi has passed away, and he—along with all other defendants apart from Wexford—have been dismissed from this litigation. [143] ¶¶ 1–6. Wexford now moves for summary judgment. [130].

## ANALYSIS

### I. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.*

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323. After a "properly supported motion for summary judgment is made, the adverse

3

party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation marks and citation omitted). Construing the evidence and facts supported by the record in favor of the nonmoving party, the court gives the nonmoving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

Wexford seeks summary judgment on Eighth Amendment claims. The Eighth Amendment protects prisoners from conditions of confinement that "involve the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). This protection extends to the denial or delay of medical care. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To establish a violation of this right, a plaintiff must show that he had "(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (citation and quotation marks omitted). It is undisputed that Frison suffered from an objectively serious medical condition.

While Wexford is a private corporation, "the *Monell* theory of municipal liability" allows plaintiffs to bring § 1983 claims "against private companies that act under color of state law." *Whiting*, 839 F.3d at 664 (citations omitted) (describing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)). Because Wexford "has contracted to provide essential government services" (medical care), Wexford is "subject [under § 1983] to at least the same rules that apply to public entities." *Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020) (quoting *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017) (en banc) (alterations in *Hildreth*)).

There is no *respondeat superior* liability under section 1983. *Gaston v. Ghosh*, 920 F.3d 493, 494 (7th Cir. 2019). Rather, in order to defeat summary judgment on his *Monell* claim against Wexford, Frison must present evidence from which a jury could find that Wexford itself was the "direct cause or moving force behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (quotation marks and citation omitted). He can satisfy this burden by showing one of three things: (1) an express policy that Wexford's officers officially promulgated; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice despite not being expressly adopted; or (3) that a person at Wexford with final policymaking authority caused the constitutional injury. *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019).

## II. Wexford's Motion for Summary Judgment

Wexford raises several arguments in support of its motion for summary judgment. As a threshold matter, Wexford argues that Frison is barred from bringing this lawsuit because he failed to exhaust his administrative remedies.

The Prison Litigation Reform Act ("PLRA") requires that before filing a § 1983 lawsuit, an inmate must first exhaust all administratively available remedies within the prison, 42 U.S.C. § 1997e(a), including by filing grievances (and appeals of grievance denials) in accordance with the prison's administrative rules, *see Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "If a prisoner fails to exhaust his administrative remedies before filing suit, the district court must dismiss the complaint." *Taylor v. Cook Cty.*, No. 11-cv-7427, 2013 WL 2285806, at *3 (N.D. Ill. May 23, 2013). This is because § 1997e(a) "makes exhaustion a precondition to suit." *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) (emphasis omitted).

Wexford argues that Frison failed to exhaust administrative remedies by not following the administrative grievance procedures applicable to IDOC inmates. [132] at 11–12. The Illinois Administrative Code sets out the procedure for the filing of grievances by IDOC inmates. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). An inmate must file a grievance with a grievance officer within 60 days after discovery of the problem that gives rise to the grievance. 20 Ill. Adm. Code § 504.810. The grievance officer is required to advise the Chief Administrative Officer ("CAO") at the facility in writing of the findings on the grievance within two months, after which the CAO must advise the inmate of the resolution of the grievance. *Id.* § 504.830. The inmate must appeal an adverse decision of the CAO in writing within 30 days. *Id.* § 504.850.

Although Frison's second amended complaint alleges that Frison "filed over ten written grievances," [44] ¶ 26, it does not attach copies of these grievances or provide any details about them (such as with whom they were filed, when they were filed, how they were handled, or whether they were appealed). Moreover, Frison's Local Rule 56.1 statements of fact mention only one of these grievances, which appears to have been submitted sometime around or before January 2017. *See* [142] ¶ 11. IDOC responded to this grievance by promptly authorizing Frison's surgery, which took place less than two months later. [142] ¶¶ 11–17; [143] ¶ 18. Accordingly, Wexford argues that no reasonable factfinder could decide that Frison exhausted administrative remedies.

Frison's opposition brief does not respond to Wexford's failure-to-exhaust argument. This amounts to waiver of any possible counterargument that Frison might have made in support of his claims. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by

5

counsel."); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Alvarez v. Wexford Health Sources, Inc.*, No. 13-cv-703, 2016 WL 7046617, at *16 n.14 (N.D. Ill. Dec. 5, 2016) (a plaintiff's failure to respond to arguments at summary judgment results in the plaintiff "conceding the point"). Because Frison has not put forward any arguments or evidence suggesting that he met § 1997e(a)'s exhaustion requirement, Wexford's motion for summary judgment is granted on the basis that Frison did not exhaust administrative remedies.

Even apart from exhaustion, Frison's claim cannot succeed on the merits because Frison has not presented evidence creating a genuine dispute of material fact that Wexford was deliberately indifferent to Frison's serious medical needs. As noted above, in order to prevail on a *Monell* claim against Wexford, Frison must put forward evidence of: (1) an express policy that Wexford's officers officially promulgated; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice despite not being expressly adopted; or (3) that a person at Wexford with final policymaking authority caused the constitutional injury. *Spiegel*, 916 F.3d at 617. Here, Frison does not allege that any Wexford employee or officer with final policymaking authority caused his injury, nor does he allege that Wexford officially promulgated an unconstitutional policy. Instead, Frison argues that Wexford employed a widespread custom or practice of unreasonably delaying medical care. *See* [141] at 7–9.

To survive summary judgment on a "custom or practice" claim, Frison must present evidence that would allow a reasonable jury to determine that Wexford's unconstitutional practices were "so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Hildreth*, 960 F.3d at 426 (quotation marks and citation omitted). It is "difficult," but "not impossible," for a plaintiff to show a widespread custom or policy based solely on his own experience. *Id.* (quotation marks and citation omitted). Frison must also put forward evidence that Wexford's policymakers knew about and failed to correct the practice, *id.*, and that Wexford's conduct was the "moving force" behind his injury, *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020) (en banc). In other words, Frison must provide evidence of a direct causal link between Wexford's conduct and his injury. *Id.*

Frison has not met this burden. Although the parties' statements of fact mention twelve dates on which medical providers or prison staff were allegedly indifferent to Frison's serious medical needs, *see* [143] ¶¶ 22–34, Frison has not presented evidence linking these delays to a Wexford custom or practice. Seven of the twelve instances of deliberate indifference cited in the statements of fact involved unidentified nurses with unknown employers, and the statements of fact do not explain what transpired during these encounters. Indeed, Frison does not allege that these unnamed nurses were Wexford employees. *See* [143] ¶¶ 25–28, 30.

6

Another two allegations involve encounters with an unnamed physician's assistant, [143] ¶¶ 29, 32, but again Frison's summary judgment materials do not explain what happened during these encounters and do not allege that the assistant was employed by Wexford. The remaining three allegations of deliberate indifference relate to conduct by Dr. Obaisi, who clearly was a Wexford employee, *see* [143] ¶¶ 23–24, 31, 33. But the three allegations regarding Dr. Obaisi do not state a claim for two independent reasons.

First, three instances of deliberate indifference "are insufficiently numerous" to survive summary judgment on a *Monell* "practice or custom" claim. *Hildreth*, 960 F.3d at 426. While the Seventh Circuit "has not adopted any bright-line rules defining a widespread practice or custom," it has acknowledged that "evidence of four" or fewer "instances that [the plaintiff] alone experienced is simply not enough to foster a genuine issue of material fact that the practice was widespread." *Id.* at 427–28 & n.6 (quotation marks and citations omitted). Here, Frison's allegations that *Wexford* delayed or denied treatment involve three instances involving Dr. Obaisi that Frison alone experienced; these three instances do not provide enough evidence "that there is a true [Wexford] policy" of denying or delaying care to survive summary judgment. *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016) (quoting *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005)).

Second, Wexford's opening brief argues that Dr. Obaisi's treatment was the product of reasonable medical judgment, and therefore cannot support a derivative *Monell* claim against Dr. Obaisi's employer, Wexford. *See* [132] at 6, 9–11; *see also Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Frison does not respond to this argument with any facts or evidence. Frison's brief does not set forth any concrete allegations regarding Dr. Obaisi's conduct during these instances, apart from the statement that "Frison was examined by Dr. Obaisi (a Wexford employee) and Dr. Obaisi diagnosed [Frison] with having a hernia." [141] at 2. Frison does not attempt to explain how or why any diagnoses or prescriptions issued by Dr. Obaisi were inadequate, let alone why Dr. Obaisi's conduct (or the conduct of any other Wexford employee) was so unreasonable as to rise to the level of deliberate indifference.

Instead, Frison argues that he should have been scheduled for surgery immediately after Dr. Trevino (who, again, was not employed by Wexford) evaluated him and recommended surgery,[4] and that "there was a failure in communicating Dr. Trevino's recommendation to Wexford." [141] at 8. All of this

---

[4] Another portion of Frison's brief seems to contend that surgery should have occurred immediately after Frison's initial complaints in 2015 (*see* [141] at 6 (alleging that surgery was delayed "for years" after "Frison presented symptoms of an incarcerated hernia in December 2015"), but Frison's brief and Local Rule 56.1 statements do not cite any record evidence, medical testimony, or case law in support of this theory.

7

may be true and if so, the delay was incredibly unfortunate, but Frison does not provide any reason to think that this failure of communication could reasonably be attributed to Wexford, rather than to the prison, Dr. Trevino's office, or some other third party. As explained above, Frison has not met the burden to put forward concrete evidence that would allow a reasonable jury to conclude that Wexford "direct[ly] cause[d]" his injury.

## CONCLUSION

Wexford's motion for summary judgment is granted. This case is dismissed with prejudice. Final judgment will enter. The Clerk of the Court is directed to close this case.

Date: September 30, 2021 /s/ Martha M. Pacold